Birchard, J.
The record shows that the jury were directed to seal up their verdict, after agreeing to it, by the presiding-judge, while all the members and officers of the court were ^present. True proclamation of adjournment had been made, but the instruction was immediately given. It was simultaneous with the act of adjournment, and may be regarded, as it. was intended to be, the act of the court. In Sergeant v. The State, 11 Ohio, 473, it is stated that, in a criminal caso, a sealed verdict. may be directed, but that the whole jury must be present when it. is delivered, in the presence of the prisoner, that they may be-> *430 ¡polled if he desires it. In that case the point that is pressed to sustain this motion was not controverted by counsel; but it does not follow that the rule of law was incorrectly stated. In practice, it is often found necessary to the comfort of jurors, as well as convenient to the public, to commit, in matters of form, much to the sound discretion of the court. In the case at bar, the customs of the country and the religious feelings of community required the adjournment of the court over the Sabbath, unless there were good reasons why it should be kept open, and scruples -of conscience or public opinion disregarded. Cases may occur where public excitement runs so high as to create just cause to fear that improper influences may be brought to bear upon jurors if allowed to separate, and to justify a court in keeping them in confinement till the delivery of their verdict, or to justify the court in convening upon the Lord’s day to receive it and discharge them; but those cases are too seldom to warrant the refusal of .any discretion to the courts of criminal jurisdiction. Nor, in our day, is there any necessity of adhering with tenacity to all the dicta of ancient times. Many of the notions in vogue centuries ago, have yielded to better reason, founded upon more enlightened views and greater experience. In the infancy <?f the law, jurors wore too frequently treated with rigorous severity} often, as if they possessed not the feelings of men, and needed .not the comforts and sustenance requisite to sustain animal life, and not unfrequently, as if utterly destitute of moral fairness and .integrity. In form, some of the ancient barbarities of the law still continue. Thus the officer, on receiving charge of them, is sworn to conduct them to their room and not suffer them to separate, or to eat or drink, water *only excepted, or to speak to them, unless it be to ask if they are agreed, or by order of •court.
This is the form.; yet, in substance, we all know that the courts -of this day do not act upon the theory of starving a juror into a verdict, but, as a matter of course, direct nourishment and conveniences for rest, when nature requires the discretion to be exercised ; and a contrary practice would not be tolerated at this enlightened period. Nor has this relaxation from the severity of the •common law resulted to the prejudice of individual security or public justice. In Sutliff v. Gilbert, 8 Ohio, 480, it was held to be •no cause for setting aside the verdict of a jury, that, when agreed *431 upon, it is sealed up and the jury separate, if afterward they come into court and report the sealed verdict. The opinion in this case is also given, that a change from this sealed verdict, after separation, could not be the foundation of a judgment, and that the verdict thus changed should be set aside. It seems to us that no good reason can be given for varying from these doctrines in a criminal case. If the jury are in court to deliver a sealed verdict, it allows the prisoner the benefit of polling them. If it was, when sealed, & verdict of guilty, there is no reason to suppose that it would have been otherwise had the court assembled to receive it immediately on their agreeing. "We are not authorized to suppose the ■case, put by counsel, that jurors will, in violation of their oaths, agree to a false verdict, in order to obtain a release, with the intention to dissent when polled. Such a supposition is totally inadmissible in argument, for it presupposes that such jurors are not ■honest men, and that they are capable of a most heinous offense. What, then, is the danger of allowing them to separate after agreeing to and sealing up the verdict? It can not prejudice the accused ; for if the sealed verdict is a verdict of acquittal, it can not be changed after the separation — if a verdict of guilty, it does not prejudice him, because, if one of the jurors, when polled, dissents, they can not be sent back to deliberate further, having been separated. So that the only chance of injury is a possible injury which may result to the prosecution.
*It is laid down in elementary writers, that the verdict of a jury, in criminal cases, is to be considered and delivered in with the same form as in civil eases, except that they can not give .a privy verdict, nor can they be discharged without giving a verdict but in cases of necessity. 4 Black. Com. 360. The reason why s, privy verdict could hot be taken was, that it deprived the prisoner of meeting the jury face to face and demanding of each his .separate verdict. The privy verdict was of no force unless afterward publicly affirmed bjr a public verdict in open court, wherein the jury might, if they pleased, vary from the privy verdict. “ So that,” says Blackstone, “ the privy verdict is a mere nullity, allowing time for the parties to tamper with the jury, and therefore -dangerous in practice and very seldom indulged in.” 3 Com. 337° The sealed verdict that remains locked in the breasts of the jurors, and concealed from the public and. the court by the wafer or wax, is not liable to many of the objections which existed against *432 the verdict privily made public. It is not, like the latter, capable of being remodeled agreeably to the notions of a judge to whom it might be delivered. It can not be changed, when delivered in-public, from a verdict of acquittal to a verdict of guilty. It is not,, like that, “ a mere nullity,” but affords to the accused all the security that justice requires, and, as we conceive, fully preserves all his rights.
The possibility that jurors may dissent from a verdict of guilty when polled, and cast upon the state the burden of a new trial, furnishes a sufficient reason to make courts cautious in exercising' the discretion of allowing jurors to seal up their verdicts. And when the exercise of the discretion becomes necessary, it would be well, as a matter of prudent caution — lest, peradventure, some-portion of the jury might fail fully to comprehend the objects of placing their verdict under seal — to instruct them to make no disclosures concerning it, and to avoid all conversation relating to the issue until after their verdict shall have been rendered in public and they discharged from the office of a jury in the cause.-
Application refused.